

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00021-CV

———————————————

ESTATE OF WILLIAM ALVIN MONCRIEF, JR., DECEASED

———————————————

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2021-PR004259-2-B

———————————————

AND

———————————————

No. 02-23-00058-CV

———————————————

ESTATE OF WILLIAM ALVIN MONCRIEF, JR. DECEASED

On Appeal from Probate Court No. 2
Tarrant County, Texas
Trial Court No. 2021-PR004259-2-B

---

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Opinion by Justice Wallach
Dissenting Opinion by Justice Birdwell

# OPINION

To arbitrate or not to arbitrate—that is the ongoing question in this internecine dispute between factions of the Moncrief family and their allies.[1] The two interlocutory appeals before us, involving three arbitrations, arise from proceedings in the Estate of William Alvin Moncrief, Jr. (Tex) in Tarrant County Probate Court Number 2 (trial court). The underlying issue in both appeals is whether Appellants' alleged fraudulent inducement of Tex, Tex's lack of mental capacity, or Tex being unduly influenced by Appellants to execute certain documents (Tex's capacity issues) should be decided by the trial court or by arbitration. In each instance the trial court held that the capacity issues should be resolved by the trial court, and the arbitrations were stayed and Appellants were enjoined from pursuing the arbitrations. For the reasons set forth below, we will reverse the orders of the trial court staying the arbitrations and enjoining Appellants from proceeding with the arbitrations, and we will order that all proceedings involving the capacity issues in these cases be stayed pending resolution of the arbitrations.

---

[1]*See Moncrief v. Moncrief*, 672 S.W.3d 156 (Tex. App.—Fort Worth, 2023, pet. filed), for our first opinion in this dispute, which will be referenced as *Moncrief 1*.

## I.    Factual Background

### a.    Case 00021

Appellants are Richard W. Moncrief (Dick), individually and as alleged Co-Trustee of the W.A. Moncrief, Jr. Management Trust (Management Trust) and Marshall M. Searcy (Marshall), individually and as alleged Co-Trustee of Management Trust (collectively Appellants). Appellees are Gloria Marie Moncrief (Gloria), Tom Oil Moncrief (Tom), and Gary R. Allen (Gary) (collectively Appellees).[2]

We will start with an overview of the Moncrief family tree:



Moncrief Partners, L.P. was formed in 1995. Tex owned ninety percent of the partnership, and his son Charlie owned the other ten percent. The partnership was managed through two general partners, each of which was a corporation created for

---

[2]Gary was Tex's chief financial officer.

each partner. In 1998, Tex and Charlie executed a First Amended and Restated Limited Partnership Agreement of Moncrief Partners, L.P. (MPA). As a result, the partnership became a Delaware limited partnership. The general partners were CBM GenPar, Inc. (CBM), Charlie's company, and WAMJR GenPar, Inc. (WAMJR), Tex's company. Each general partner held one percent interest in the limited partnership. The limited partners were Tex (89% interest) and Charlie (9% interest). In 2002, WAMJR merged into CBM, making CBM the sole general partner.

The MPA provided for substituting general and limited partners with the consent of the remaining partners. It also provided that the terms of the agreement applied to all substituted partners. In the MPA, when the term "partners" was used without specifying "general" or "limited," it was defined to include both general and limited partners. This definition tied into the arbitration provision of the MPA, which provided for arbitration of "any dispute, difference[,] or question, as to any matter whatsoever . . . between any of the Partners or Assignees, or between any of the Partners or Assignees and the Partnership and/or the General Partners." MPA Section 11.06, the "Governing Laws" section, provided that "THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTNERS HEREUNDER SHALL BE INTERPRETED, CONSTRUED[,] AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE."

MPA Exhibit G specifically dealt with arbitration of claims like the ones here. Paragraph (A) set forth a detailed process for arbitration through the American

Arbitration Association (AAA), addressing matters such as payment of fees, giving of notice, selection of arbitrators, and location of arbitration sessions. Paragraph (B) provided that all arbitration proceedings were to be conducted in accordance with the Commercial Arbitration Rules of the AAA, that "such rules shall be interpreted and applied, and [that] questions regarding the arbitration process not resolved under such rules shall be determined in accordance with Delaware law, to the extent required by applicable Delaware law (i.e., the Act), or if not so required then in accordance with Texas law." The "Act" was defined in the definitions section of the MPA as the "Delaware Revised Uniform Limited Partnership Act, Del. Code Ann., tit. 6, ch. 17" as amended, revised, or supplemented from time to time.

In 2010, Tex created Management Trust to hold the significant share of his property during his life and to distribute it upon his death. In December 2010, the MPA was amended to admit Management Trust and the Estate of Deborah B. Moncrief (Tex's deceased spouse) as substituted limited partners. Thus, the limited partner interests in MPA became (1) Management Trust (44.5%), (2) the Estate of Deborah B. Moncrief (44.5%), and (3) Charlie (9%). The general partner, CBM, held the remaining 2% interest. In this amendment, Management Trust, through Tex as its Trustee, agreed to be bound by all the terms of the MPA.

Tex had the sole power to appoint successor Trustees for Management Trust. In June 2019, Tex signed a Sixteenth Amendment and Complete Restatement of Management Trust naming Charlie, Gary, and Tom as successor Co-Trustees. He also

provided that if Charlie failed to qualify or act as successor Co-Trustee, Gloria would become successor Co-Trustee in his place. In May 2020, Tex signed a Twenty-Second Amendment of Management Trust, appointing Dick as successor Co-Trustee with Charlie, Tom, and Gary. In August 2020, Tex signed a Twenty-Third Amendment which left substantial property to Gloria. And in October 2020, Tex signed the Thirty-Second Amendment to Management Trust, which restated a series of amendments he made earlier in October, including naming Dick and Marshall as the sole successor Co-Trustees of Management Trust. Tex signed further amendments to Management Trust in the latter part of 2020 and into 2021, including Amendments and Restatements in March, April, July, and September of 2021—all of which named Dick and Marshall as the sole successor Co-Trustees of Management Trust.[3] No version of Management Trust contained an arbitration provision.

On April 6, 2022, Appellants, as the named Independent Executors under Tex's Last Will and Testament and as alleged Co-Trustees of Management Trust, filed a declaratory judgment suit against Gloria in the trial court seeking declarations that they are the sole Trustees of Management Trust and that Gloria is not a Trustee.[4] On April

---

[3]Charlie died in January 2021, resulting in Gloria's claimed succession to his position as successor Co-Trustee of Management Trust. Gloria is also the president of CBM. Tex died on December 29, 2021.

[4]Appellees focus on the fact that Appellants invoked the trial court's jurisdiction by asking it to declare them as rightful Trustees. But filing suit is not a waiver of a party's

7

14, 2022, Gloria filed her "Original Answer," pleading a general denial and a verified denial that Marshall and Dick have no legal capacity to sue or recover in the capacities alleged by them, i.e., as Co-Trustees of Management Trust. Gloria and Gary, as alleged Co-Trustees of Management Trust, simultaneously filed a counterclaim, petition in intervention, and third-party petition in the trial court challenging Appelants status as Trustees of Management Trust. Their allegations were based, in large part, on Tex's capacity issues regarding signing of the amendments to Management Trust that designated Appellants as successor Co-Trustees, which capacity issues they claimed rendered those amendments unenforceable.

On June 30, 2022, Appellants, as alleged Co-Trustees of Management Trust, filed an arbitration demand with AAA against Moncrief Partners, L.P. (nominally) and its general partner, CBM (MPA arbitration). Appellants asserted their rights to proceed as Co-Trustees of Management Trust and sought (1) a determination of the rightful partnership interests of Moncrief Partners, (2) an audit or accounting of the flow of funds in and out of Moncrief Partners, (3) a determination of the breaches of fiduciary duties, waste of assets, self-dealing, and financial wrongs of CBM, and (4) damages.

On July 11, 2022, Moncrief Partners and CBM responded to the MPA arbitration demand contending that Appellants were not signatories to the Management Trust

---

right to subsequently pursue arbitration. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 118 (Tex. 2018).

8

agreement and had no authority or standing to pursue arbitration since they were not signatories. They also contended that the issue of Appellants' status as successor Trustees was being contested as a "gateway issue" in the trial court and in the trial court proceedings in *Moncrief 1* and that the MPA arbitration should be suspended pending judicial resolution of this issue by the trial court. Of course, the basis for contesting Appellants' status as successor Trustees in both matters was Tex's ability to contract due to the alleged capacity issues. Appellants responded to AAA that the capacity issues should be determined by the arbitrator under the arbitration clause in the MPA.

On September 30, 2022, Moncrief Partners and CBM intervened in the trial court. Moncrief Partners and CBM sought a declaration that Appellants, based on the capacity issues, lacked the standing, capacity, and authority to act on behalf of Management Trust.

On September 30, 2022, Gloria and Gary, as alleged Co-Trustees of Management Trust, Moncrief Partners, and CBM, jointly filed in the trial court a "Motion to Stay Arbitration and Application for Temporary and Permanent Injunction" seeking to enjoin the MPA arbitration. The capacity issues were raised again to challenge Appellants' status as Co-Trustees of Management Trust. Tom joined this motion on October 14, 2022.

On October 13, 2022, Appellants filed three pleas or motions: "Plea to the Jurisdiction and, Alternatively, Motion to Dismiss or Stay," "Motion to Strike

9

Intervention Subject to Plea to the Jurisdiction," and "Motion to Stay Litigation, and Alternatively, to Compel Arbitration."[5]

In the Motion to Stay/Compel Arbitration, Appellants contended that the dispute between them and Moncrief Partners and CBM was subject to a valid arbitration agreement and that Delaware law delegated resolution of that dispute to arbitration, including the capacity issues. Appellants argued that since the capacity issues were also involved in other matters pending in the trial court, their consideration in the trial court was required to be stayed pending outcome of the MPA arbitration.

On October 18, 2022, Appellees, Moncrief Partners, and CBM filed their "Response to [Appellants]' Plea to the Jurisdiction, Motion to Dismiss or Stay, and Motion to Compel Arbitration and Stay Litigation." They contended that Texas law applied, that the issue of who decides whether Appellants were properly Trustees of Management Trust due to Tex's capacity issues rested with the trial court, not the arbitrator, as a gateway contract formation issue, and that the trial court was authorized to enter a temporary injunction to allow discovery on that issue before deciding it.

---

[5]Because the trial court ultimately granted the Motion to Strike the Intervention by Moncrief Partners and CBM, which issue is not on appeal, we will focus on Gloria, Tom, and Gary and only address CBM and Moncrief Partners as they affect the former. Likewise, because there is no complaint on appeal of the trial court's denial of the Plea to the Jurisdiction, it will only be discussed as it may affect the remaining issues.

Appellees filed their Amended Counterclaim on December 7, 2022. Appellees' claims were made individually, as alleged Co-Trustees of Management Trust, and in other representative capacities. Appellees alleged, inter alia:

a. that the amendments to Management Trust after August 14, 2020, that made Appellants the sole Co-Trustees of Management Trust were void or unenforceable because of Tex's capacity issues;

b. their entitlement to a declaration that the last valid amendment to the Management Trust was the Twenty-Third Amendment and that the trust should be administered as it was written as of August 14, 2020 because of the capacity issues;

c. the court should impose a constructive trust on the Management Trust assets that were distributed after August 14, 2020, in violation of Management Trust as it existed prior to that date;

d. the court should disqualify Appellants under the Texas Trust Code from serving as Co-Trustees of Management Trust because of Tex's capacity issues and Appellants' other wrongful conduct;

e. the court should grant temporary relief appointing a receiver for Management Trust under Texas Civil Practice and Remedies Code Section 64.001, Tex. Civ. Prac. & Rem. Code Ann. § 64.001, because of actions taken by Appellants as the improper Co-Trustees of Management Trust; and

f. the court should set aside multiple transactions authorized by Appellants as the improper Co-Trustees of Management Trust.

After a hearing on the various motions, the trial court denied Appellants' motion to stay/compel arbitration because it was directed only at Moncrief Partners and CBM (whose interventions it struck). The trial court did not expressly rule on Appellants'

alternative request to stay Appellees' counterclaims based on Tex's capacity issues.[6] The court granted Appellees' Motion to Stay the MPA arbitration and issued a temporary injunction against Appellants from proceeding further with the MPA arbitration. This interlocutory appeal ensued.

b.     **Case 00058**

The individual parties will bear the same references as in 00021. The Moncrief Oil & Gas Master LLC will be referred to as OGM and the South Beaver Ranch LLC will be referred to as SBR.

Tex formed OGM, a Texas limited liability company, in 2010, with Tex and the Estate of Deborah B. Moncrief each owning a 50% membership interest. Tex, individually and as personal representative of Deborah's Estate, signed an Amended and Restated Limited Liability Company Agreement on July 28, 2010 (the OGM Agreement). Under the OGM Agreement, Tex and Deborah's Estate each held a 50% membership interest, and the manager was Tex, acting both individually and as personal representative of Deborah's Estate.

---

[6]Because the trial court granted Appellees a temporary injunction prohibiting Marshall and Dick from continuing their pursuit of the MPA arbitration and granted Appellees' request to stay the MPA arbitration, this ruling constitutes an implicit denial of Appellants' Motion to Stay litigation of Tex's capacity issues in the trial court pending the arbitration. *See Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 557 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (granting relief to one party which is mutually exclusive to the opposing party's request for relief constitutes an implicit denial); *see also Performance Chem. Co. v. Echols Holding, LLC*, No. 11-14-00261-CV, 2016 WL 687184, at *5 (Tex. App.—Eastland Feb. 18, 2016, no pet.) (mem. op.).

The OGM Agreement provides for the admission of substitute members with the consent of the remaining members. The Agreement applies to substitute members and requires substitute members to adopt and acknowledge it in writing. The OGM Agreement provides it is "binding upon the parties and their respective heirs, executors, personal representatives, successors[,] and assigns." It also provides that the agreement shall be governed by Texas law. The OGM Agreement contains the following arbitration clause:

> Dispute Procedure. If at any time during the existence of the Company, any question, disagreement, difference or controversy shall arise between the Members concerning the Company, its affairs, transactions, business or accounts, or the meaning or interpretation of this Agreement, or the rights, duties or obligations of the Members, then any Member may cause such question, disagreement, difference or controversy **to be submitted to and determined by arbitration, in accordance with the rules then in effect of the American Arbitration Association. The arbitration shall be conducted on an expedited basis and shall be subject to, and the arbitrators shall have the powers and rights afforded by, the rules of the American Arbitration Association and the arbitration statutes then in effect in the State of Texas.** [Emphasis added].

Also in 2010, Tex created the Moncrief 2010 Trust (2010 Trust) by written agreement. Tex was the settlor of the 2010 Trust and Charlie was the Trustee. Appellees subsequently became Co-Trustees of the 2010 Trust. The 2010 Trust Agreement generally benefitted Charlie, Tom, and Dick. The 2010 Trust Agreement reserved to Tex the power to substitute trust property to "replace principal of any trust hereunder with other property" having equal and equivalent value (the Power of Substitution). Under this power, the "replaced principal shall be delivered to [Tex] upon receipt of

13

the substitute property by the Trustees." Further, Tex could "exercise the power in his sole discretion, without the approval or consent of anyone acting in a fiduciary capacity." Thus, according to Appellants, the 2010 Trust Trustees did not need to approve Tex's exercise of the Power of Substitution; instead, the replaced trust property automatically vested in Tex.

Returning to OGM, in 2012 Tex amended the OGM Agreement to admit Management Trust as a substituted member of OGM in his place. Tex remained a manager of OGM in his individual capacity and a manager as personal representative of Deborah's Estate. Management Trust agreed to be bound by the terms of the OGM Agreement.

In 2013, Tex again amended the OGM Agreement to admit the Deborah Beggs Moncrief Family Trust (Deborah's Family Trust) as a substitute member and manager in place of Deborah's Estate. Deborah's Family Trust (through Tex as Trustee) agreed to be bound by the terms of the OGM Agreement. Thus, after the 2013 Amendment, the OGM members were Management Trust (50%) and Deborah's Family Trust (50%), and the managers were Tex, individually, and Deborah's Family Trust (by Tex as Trustee).

Charlie was named an additional manager in a 2015 Amendment to the OGM Agreement. Amendments in July 2017 and June 2019 provided for successor managers. As a result, Tom and Gary were named successor managers for Tex, individually, and Gloria was named successor manager for Charlie.

14

In March 2018, Tex assigned Management Trust's 50% membership interest in OGM to the 2010 Trust. He purportedly did so in exchange for a promissory note maturing in 2027, signed by Charlie as Trustee of the 2010 Trust, and made payable to Management Trust (the 2010 Trust Note). At the same time, the OGM Agreement was amended to admit the 2010 Trust as a substitute member in place of Management Trust. This Amendment also amended the OGM Agreement to require the consent of the managers and all non-transferring members to any disposition of a membership interest.

Moving to SBR, in 2010, Tex formed SBR by signing the Limited Liability Company Agreement (SBR Agreement). SBR is a Colorado entity and the SBR Agreement is "governed by and construed in accordance with" Colorado law. Like OGM, Tex and Deborah's Estate each held a 50% membership interest, and the managers were Tex individually, and Tex as personal representative of Deborah's Estate. The SBR Agreement also provides for the admission of substitute members with the consent of the remaining members. Substitute members must adopt and acknowledge the SBR Agreement in writing. Further, the SBR Agreement is expressly "binding upon the parties hereto and their respective heirs, personal representatives, successors[,] and assigns." The SBR Agreement contains the identical arbitration clause found in the OGM Agreement that adopts the AAA rules and Texas "arbitration statutes," while it generally declares that the Agreement is to be governed by and construed in accordance with the laws of Colorado.

15

In 2012, Tex amended the SBR Agreement to admit Management Trust as a substitute member in place of Tex. Management Trust agreed to be bound by all the terms of the SBR Agreement. Tex remained a manager both individually and as personal representative of Deborah's Estate.

In 2013, Tex again amended the SBR Agreement to admit Deborah's Family Trust as a substitute member and manager in place of Deborah's Estate. Deborah's Family Trust (through Tex as Trustee) agreed to be bound by all the terms of the SBR Agreement. Thus, after the 2013 Amendment, the SBR members were Management Trust (50%) and Deborah's Family Trust (50%), and the managers were Tex, individually, and Deborah's Family Trust (through Tex as Trustee).

In 2017, Tex again amended the SBR Agreement, naming Charlie as successor manager for Tex. This Amendment also named Gloria and Tom as successor managers for Charlie. So, by October 2020, Tex and Deborah's Family Trust (through Tex as Trustee) were managers of both OGM and SBR (Charlie was also a manager of OGM); Deborah's Family Trust (through Tex as Trustee) was a member of both OGM and SBR; the 2010 Trust was the other member of OGM; and Management Trust (with Tex as Trustee) was the other member of SBR.

On March 24, 2021, Tex purportedly exercised his power of substitution in the 2010 Trust. Management Trust (through Tex as Trustee) assigned the 2010 Trust Note (and associated lien) to Tex individually. Tex then exercised his power of substitution by reacquiring the 2010 Trust's 50% membership interest in OGM in exchange for the

forgiveness of all amounts due and owing on, and cancellation of, the 2010 Trust Note. According to Appellants, the Co-Trustees of the 2010 Trust (Gloria, Gary, and Tom) immediately received the benefit of the forgiveness and cancellation of the 2010 Trust Note (the substitute property), and the 2010 Trust's membership interest in OGM automatically reverted and vested in Tex. Tex allegedly directed the Co-Trustees of the 2010 Trust to assign the membership interest directly to Management Trust, thus avoiding a two-step process whereby the membership interest would be assigned to Tex and then assigned by Tex to Management Trust.

Management Trust (through Tex as Trustee) agreed to be bound by the OGM Agreement. Tex, as Trustee of Deborah's Family Trust (the other member and a second manager of OGM), also consented to the transfer of the 2010 Trust's membership interest to Management Trust. Gloria, Gary, and Tom (Co-Trustees of the 2010 Trust) refused to consent. According to Appellants, since Tex had the right to exercise the power of substitution in his absolute discretion, the consent of the Co-Trustees of the 2010 Trust was not required.

Tex signed a Fourth Amendment to the SBR Agreement in August 2021. The Fourth Amendment provided that in the event of Tex's resignation, removal, death, disability, or legal incapacity, Dick, Marshall, and Tom shall automatically become the successor managers of SBR, and Deborah's Family Trust shall automatically be removed as a manager. The Fourth Amendment also expressly provided that the successor managers would act by majority vote. Tex signed the Fourth Amendment

17

as manager, both individually and as Trustee of Deborah's Family Trust (the managers of SBR), and as Trustee of the two members of SBR, Deborah's Family Trust and as Trustee of Management Trust.

This probate court litigation—filed separate from but in the same trial court as the MPA litigation—began on December 31, 2021, when Appellants filed an application to probate Tex's will and have themselves appointed as independent co-excutors of his will. On January 24, 2022, Gloria filed her "Original Petition to Contest Purported Will." In this pleading, Gloria accused Appellants of engaging in fraudulent conduct in having Tex execute the will they sought to have admitted to probate and in seeking to be appointed as executors, among other things. She then filed to admit an earlier will to probate and have herself appointed independent co-excutor of Tex's estate.

In an ancillary proceeding, on April 6, 2022, Appellants, as alleged Co-Trustees of Management Trust, filed a declaratory judgment suit against Gloria in the trial court seeking a declaration that they are the sole Trustees of Management Trust and that Gloria is not a Trustee, based on the last amendments to Management Trust. Gloria and Gary, purportedly as Co-Trustees of Management Trust, filed a counterclaim and third-party petition in the ancillary proceeding challenging Appellants' status as Trustees of Management Trust. A basis of their counterclaim was that Appellants were not authorized to act on behalf of Management Trust because of Tex's capacity issues. On December 7, 2022, Appellees, individually and in various representative capacities, filed

18

an amended counterclaim. Others intervened in the same pleading, some claiming to be Trustees of the 2010 Trust, as well as Trustees of other trusts purportedly being beneficiaries under the 2010 Trust (the 2010 Trust Intervenors), and Deborah's Family Trustees, as a member and manager of SBR (the SBR Intervenors). The 2010 Trust Intervenors raised Tex's capacity issues to challenge the validity of the documents signed by Tex regarding his exercise of the power of substitution regarding OGM. The SBR Intervenors (and derivatively on behalf of SBR) raised Tex's capacity issues to challenge the validity of the Fourth Amendment to the SBR Agreement.

On December 16, 2022, Appellants, on behalf of and as alleged Co-Trustees of Management Trust, filed an arbitration demand with AAA against Appellees as Co-Trustees of the 2010 Trust, for declaratory relief and specific performance that Management Trust holds a 50% membership interest in OGM (the OGM Arbitration). Also on December 16, 2022, Appellants, as alleged Co-Trustees of Management Trust and on behalf of SBR and Management Trust (as a member of SBR), and as managers of SBR, filed an arbitration demand with AAA against SBR Intervenors, Gloria and Tom, as purported Co-Trustees of Deborah's Family Trust as a member of SBR (the SBR Respondents). Appellants sought declaratory relief that the Fourth Amendment to the SBR Agreement is valid and enforceable (the SBR Arbitration).

Appellees raised Tex's capacity issues in both arbitration proceedings to assert the absence of an agreement to arbitrate with Appellants, claiming that they are "gateway issues" being addressed by the trial court. In response, the AAA stated that

19

"the parties' contentions have been made a part of the file and will be forwarded to the arbitrator upon appointment, at which time the parties may submit their jurisdictional or arbitrability arguments to the arbitrator for determination." Thus, the Appellees raised Tex's capacity issues in both the OGM and SBR arbitrations. In both arbitrations, Appellants contended that Tex's capacity issues should be determined by the arbitrators, not the trial court.

Meanwhile, also on December 16, 2022, Appellants filed in the probate court motions to compel arbitration and to stay litigation regarding both the OGM and SBR Arbitrations (Motions to Compel Arbitration and Stay Litigation) and motions to strike the interventions of the 2010 Trust Intervenors and the SBR Intervenors. In early February 2023, Appellees, purporting to act as Co-Trustees of Management Trust (and joined by the 2010 Trust Intervenors and SBR Intervenors), filed a "Motion to Stay [SBR] and [OGM] Arbitrations and Application for Temporary and Permanent Injunctions" seeking to stay and enjoin both arbitration proceedings. The same parties filed a "Second Amended Counterclaim, Petition in Intervention, and Third-Party Petition" on February 13, 2023. In response, Appellants filed their "First Supplement to their Motion to Compel Arbitration and Stay Litigation."

The trial court heard the motions on February 14, 2023. By Order signed on February 17, 2023, the trial court partially granted Appellants' Motion to Strike Intervention, dismissing the 2010 Intervenors and SBR Intervenors from the lawsuit, and striking their interventions, and denying Appellants' Motion to Compel Arbitration

20

against the intervenors as moot. The probate court did not rule on Appellants' alternative motion to stay litigation pending the outcome of the arbitrations, but it implicitly denied it for the same reason stated above in case 00021, i.e., it granted the Appellees' temporary injunction prohibiting Appellants from pursuing the arbitrations and stayed the arbitrations.

## II.     Standards of Review and Common Legal Principles

The granting of a temporary injunction lies within the sound discretion of the trial court and will only be set aside if the trial court abused its discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Moncrief 1*, 672 S.W.3d at 163. The reviewing court must not substitute its judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion in granting or denying a request for temporary injunctive relief when it misapplies the law to the established facts. *State v. Sw. Bell. Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *Moncrief 1*, 672 S.W.3d at 163; *Est. of Shultz*, No. 11-21-00177-CV, 2022 WL 4099404, at *3 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.).

When a valid arbitration agreement exists and its scope covers the dispute between the parties, it is an abuse of discretion for the trial court to enjoin arbitration of the dispute. *Friedman & Feiger, LLP v. Massey*, Nos. 02-18-00401-CV, 02-18-00402-CV, 2019 WL 3269325, at *9 (Tex. App.—Fort Worth July 18, 2019, pet. denied) (mem. op. on reh'g); *Valero Energy Corp. v. Wagner & Brown II*, 777 S.W.2d 564, 567–68 (Tex.

21

App.—El Paso 1989, writ denied); *see Moncrief 1*, 672 S.W.3d at 163. If neither the state nor federal arbitration acts are pivotal, we may rely on cases applying both acts under the assumption that their principles are consonant. *Moncrief 1*, 672 S.W.3d at 163; *Gainey v. Minoo, LLC*, No. 02-19-00171-CV, 2019 WL 6768128, at *7 n.4 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (mem. op.). Both the federal (FAA) and Texas (TAA) arbitration acts require courts to stay litigation of issues that are subject to arbitration. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding); *SSC Wimberley Operating Co., LLC v. Goodman*, 665 S.W.3d 729, 739 n.3 (Tex. App.—San Antonio Jan. 11, 2023, no pet); *Diligent Tex. Dedicated LLC v. York*, No. 02-17-00416-CV, 2018 WL 4140637, at *5 (Tex. App.—Fort Worth Sept. 20, 2018, pet. denied) (mem. op.); *see* 9 U.S.C.A. § 3; Tex. Civ. Prac. & Rem. Code Ann. § 171.025.

Under the FAA, the claims of a non-signatory against a signatory to an arbitration agreement must be stayed pending the outcome of the arbitration between other parties if

> (1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are "inherently inseparable," and (3) the litigation has a "critical impact" on the arbitration. *In re Devon Energy Corp.*, 332 S.W.3d 543, 548 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)); *see also* 9 U.S.C.[A.] § 3 (providing for a stay of litigation pending arbitration). . . . **"Our focus concerns the preservation of meaningful arbitration, not the potential harm to the interests of a nonsignatory."** [*Devon Energy Corp.*, 332 S.W.3d] at 550.

*In re Hous. Progressive Radiology Assocs., PLLC*, 474 S.W.3d 435, 449–50 (Tex. App.—

Houston [1st Dist.] 2015, orig. proceeding) (emphasis added); *see also Zuffa, LLC v.*

*HDNet MMA 2008 LLC*, 262 S.W.3d 446, 450 (Tex. App.—Dallas 2008, no pet.).

Under the TAA,

> "[t]he [trial] court shall stay a proceeding that involves an issue subject to arbitration if an order for arbitration or an application for that order is made under this subchapter." Tex. Civ. Prac. & Rem. Code Ann. § 171.025(a) (West 2011). But "[t]he stay applies only to the issue subject to arbitration if that issue is severable from the remainder *of the proceeding.*" *Id.* § 171.025(b) (emphasis added). "A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues.["] (quoting [*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990)]).

*Hous. Progressive Radiology Assocs., PLLC*, 474 S.W.3d at 450–451.

## III.    Analysis

### a.      case 00021–MPA

#### 1.      Issues on Appeal

Appellants bring four issues. Issues one and two, considered together, contend

that the trial court abused its discretion by enjoining and staying the MPA arbitration

and by denying Appellants' request to stay litigation on Tex's capacity issues, because

Appellants have a valid arbitration agreement under the MPA which delegates

arbitrability disputes to the arbitrator. Appellants' third issue contends that the trial

court abused its discretion in entering the same orders because the MPA arbitration

agreement was binding on Appellees and covers Tex's capacity issues. Appellants' issue

23

four contends the trial court abused its discretion in entering the same orders because it misapplied the law and there is no evidence to support the trial court's findings.

We will sustain Appellants' issues one and two collectively, holding that Appellants are parties to a valid and enforceable arbitration agreement within the MPA, that the arbitration provisions in the MPA agreement delegate arbitrability disputes to the arbitrator, and that Tex's capacity issues were raised in the arbitration between the parties to the MPA agreement. Therefore, the trial court abused its discretion by enjoining and staying the MPA arbitration and by denying Appellants' request to stay litigation of Tex's capacity issues in the trial court. In light of these holdings, we need not address Appellants' remaining issues. *See* Tex. R. App. P. 47.1.

### 2. Law Applicable to MPA Arbitration Agreement[7]

The MPA provides that it is governed by Delaware law generally. The arbitration provision provides specifically that arbitration proceedings under Exhibit G shall be

---

[7]Appellees contend that the dispute is not about the MPA, but about the Management Trust because CBM and Moncrief Partners were dismissed as Intervenors. This argument misses the mark as will be addressed below. In short, because Appellants had an enforceable arbitration agreement under the MPA with CBM and Moncrief Partners, which agreement delegated arbitrability issues to the arbitrator (including Tex's capacity issues) the trial court abused its discretion by enjoining Appellants from pursuing that arbitration and staying the arbitration. The trial court also abused its discretion by not staying proceedings in the trial court regarding Tex's capacity issues because they were the subject of the pending MPA arbitration.

Appellees further contend that the trial court had jurisdiction of all matters related to the probate proceeding that it had pendent and ancillary jurisdiction to promote judicial efficiency and economy, and jurisdiction over an action by or against a trustee involving a trust. Tex. Est. Code Ann. §§ 32.001(a), (b); 32.007(2), (3).

24

conducted in accordance with the AAA's Commercial Arbitration Rules, that any questions regarding the arbitration process not resolved under the AAA rules "shall be determined in accordance with Delaware law, to the extent required by . . . Delaware law (i.e., the Act[, defined as the Delaware Partnership Act]), or . . . in accordance with Texas law" if not required by Delaware law.

For all purposes relevant to this analysis, Delaware and Texas law are in accord. First, parties to a contract are generally free to determine which state's law will govern their agreement so long as the jurisdiction chosen bears some material relationship to the transaction. *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (orig. proceeding); *J.S. Alberici Const. Co. v. Mid-West Conveyor Co.*, 750 A.2nd 518, 520 (Del. 2000). In this case, the parties do not dispute the propriety of the choice of law provisions. Further, the MPA's general language adopting Delaware law does not mandate the use of the Delaware Uniform Arbitration Act. Therefore, under Delaware law, the FAA governs applications for courts to stay or enjoin arbitrations because the parties did not specifically reference the Delaware Arbitration Act as the governing law. *Lewis v. AimCo Prop., L.P.,* No. 9934-VCP, 2015 WL 557995, at *3 n.9 (Del. Ch. Feb. 10, 2015) (mem. op.) (not published); *accord In re Olshan Found. Repair Co., LLC,*

---

However, probate courts having jurisdiction of disputes must still enforce arbitration provisions in wills and trusts if they are otherwise enforceable under the arbitration statutes. *Rachal v. Reitz,* 403 S.W.3d 840, 845 (Tex. 2013); *Ali v. Smith,* 554 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

25

328 S.W.3d 883, 890 (Tex. 2010) (orig. proceeding) (holding that arbitration provision, which provided that arbitration would be conducted pursuant to the laws of "your state" Texas, did not exclude applicability of the FAA, as opposed to one which specifically adopts the TAA, because the FAA is part of Texas arbitration law).

Appellees contend that this case should be governed by the TAA, not the FAA. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001–.098. Appellees argue that Appellants invoked the TAA when they asked the trial court to stay litigation and compel arbitration under the TAA, when they asked the trial court to withdraw the stay of arbitration, and when they filed their notice of appeal. Appellees further argue that they invoked the TAA when they asked the trial court to stay the arbitration and requested discovery regarding the existence of an agreement to arbitrate with Appellants as non-signatories. Finally, Appellees argue that the trial court relied on its authority under the TAA, invoked by both sides, when granting the relief requested by Appellees.

We are not persuaded that the TAA formed the exclusive basis for the trial court's amended order. First, the order did not so state. Second, while Appellants did invoke the TAA in their motions, they also cited to the *In re Merrill Lynch Trust Co. FSB* case for the proposition that the Appellees' claims in the trial court should be stayed pending the outcome of the MPA arbitration. *See Merrill Lynch Tr. Co. FSB*, 235 S.W.3d at 195–96. That case was based on the FAA and in the context of this case, that request was sufficient to invoke the FAA and to preserve it for our review. *In re L&L Kempwood Assoc., L.P. v. Omega Builders, Inc.*, 9 S.W.3d 125, 127 (Tex. 1999) (holding that citing to

26

FAA in motion to compel arbitration in the trial court invoked the FAA and preserved the issue for appellate review).

Third, both states' laws strongly support enforcement of arbitration agreements. In Texas, where a valid arbitration agreement covers the scope of the dispute in question, it is an abuse of discretion to enjoin the arbitration of the dispute. *Moncrief 1*, 672 S.W.3d at 163; *Valero Energy Corp.*, 777 S.W. 2d at 567–68. In Delaware, the question is one of jurisdiction, i.e., if a dispute, on its face, falls within the scope of a contractual arbitration clause, the court lacks jurisdiction to proceed and the case must be dismissed. *Rummel Klepper & Kahl, LLP v. Delaware River & Bay Auth.*, No. 2020-0458-PAF, 2022 WL 29831, at *4 (Del. Ch., Jan. 3, 2022) (mem. op., not published).

Fourth, the two states have adopted similar approaches regarding who decides the validity of challenges to arbitration. If the challenge is to the validity of a broader contract (container contract) but not to the arbitration provision contained within the container contract, then courts must enforce the arbitration agreement and require the arbitrator to decide the validity or scope of the arbitration agreement. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 701 (Tex. 2023). However, if a party challenges the scope or validity of an arbitration provision within a container contract, courts generally resolve the issue of whether the parties agreed to arbitrate the controversies. *Id.* An exception to this rule exists when parties to an agreement agree to arbitrate disputes in accordance with third-party arbitration rules that provide that the arbitrator has the power to determine the arbitrability of any claim. *Id.* at 712. In such

27

a case, the parties are considered to have "clearly and unmistakably" intended to delegate arbitrability issues to the arbitrator. *Id.*; *see also West IP Commc'ns, Inc. v. Xactly Corp.*, No. N13C-06-052 DCS, 2014 WL 3032270, at *7, *10 (Del. Super. Ct. Mar. 9, 2021) (not published).

In *TotalEnergies*, the parties had agreed to submit any "dispute or controversy that arises between the [p]arties out of this [a]greement" to arbitration in accordance with the commercial rules of the AAA. 667 S.W.3d at 699. Based on the AAA rules, the Court held that "as a general rule, an agreement to arbitrate disputes in accordance with rules providing that the arbitrator 'shall have the power' to determine 'the arbitrability of any claim' incorporates those rules into the agreement and clearly and unmistakably demonstrates the parties' intent to delegate arbitrability issues to the arbitrator." *Id.* at 712. In so holding, our Supreme Court noted that Delaware has adopted the same rule. *Id.* at 711; *see James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80 (Del. 2006).

Appellees contend that in *Willie Gary*, the Supreme Court of Delaware held that where an arbitration clause provides for "carve-outs" for court proceedings, incorporation of the AAA rules does not clearly and unmistakably delegate arbitrability determinations to the arbitrator. Therefore, Appellees conclude that since there is a limited "carve-out" in the MPA for certain court proceedings (though no specific carve-out was relied upon), there was no delegation of arbitrability to the arbitrator. However, subsequent Delaware cases have refined the *Willie Gary* holding as follows:

28

Our Courts have since provided additional guidance on how to apply *Willie Gary. Willie Gary* is satisfied where a contract generally provides for arbitration of all disputes and incorporates the AAA rules, so long as "the carveouts and exceptions to committing disputes to arbitration [are not] so obviously broad and substantial as to overcome a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability."

*Blackmon v. O3 Insight, Inc.*, No. 2020-1014-SG, 2021 WL 868559, at *3 (Del. Ch. Mar. 9, 2021) (not published) (citing *McLaughlin v. McCann*, 942 A.2d 616, 622–25 (Del. Ch. 2008)); *see also Innovation Inst., LLC v. St. Joseph Health Source, Inc.*, No. 2019-0156-JRS, 2019 WL 4060351, at *5 (Del. Ch. Aug. 29, 2019) (corr. op) (not published); *Greenstar IH Rep, LLC v. Tutor Perini Corp.*, No. 12885-VCS, 2017 WL 715922, at *5 (Del. Ch. Feb. 23, 2017) (not published); *Redeemer Comm. of the Highland Crusader Fund*, No. 12533-VCG, 2017 WL 713633, at *3 (Del. Ch. Feb. 23, 2017) (not published); *Legend Nat. Gas II Hldgs., LP v. Hargis*, No. 7213-VCP, 2012 WL 4481303, at *6 (Del. Ch. Sept. 28, 2012) (not published); *Carder v. Carl M. Freeman Cmtys., LLC*, No. 3319-VCP, 2009 WL 106510, at *5–7 (Del. Ch. Jan. 5, 2009) (not published).

The Texas Supreme reached a similar conclusion in *TotalEnergies*, where it held that the arbitration agreement language in that case constituted a clear and unmistakable delegation of arbitrability issues to the arbitrator. 667 S.W.3d at 719. In fact, the Court held:

We thus conclude that the fact that the parties' arbitration agreement may cover only some disputes while carving out others does not affect the fact that the delegation agreement clearly and unmistakably requires the

29

arbitrator to decide whether the present disputes must be resolved through arbitration.

*Id.*

In this case, the MPA's language is similar to that in *TotalEnergies* and constitutes a clear and unmistakable intent to delegate arbitrability to the arbitrator as demonstrated by the broad scope of the arbitration provision and the clear and extensive adoption of the AAA rules and processes. *See id.*

Further, Texas law and Delaware law are in accord regarding successors in interest being bound to the contracts of those to whom they have succeeded. In Delaware, nonsignatories to contracts may be bound to contracts not signed by them under what it describes as the principle of adoption. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343–44 (Del. Ch. 2003); *Techview Inv. Ltd., v. Amstar Poland Prop. Fund I, L.P.*, No. N20C-11-229 EMD CCLD, 2021 WL 3891573, at *8, n.87 (Del. Super. Ct. Aug. 31, 2021) (not published). Adoption may occur when successors expressly adopt contracts of predecessors or when they adopt contracts of predecessors through conduct such as accepting the benefits of a contract made for their benefit. *Am. Leg. Found.*, 831 A.2d at 349; *Techview Inv. Ltd*, 2021 WL 3891573, at *8; *DiRienzo v. Lichtenstein*, No. 7094–VCP, 2013 WL 5503034, at * 19 (Del. Ch. Sept. 30, 2013, app. ref'd) (mem. op., not published); *Vaughan v. Creekside Homes, Inc.*, No. 1043-S, 1994 WL 586832, at *7 (Del. Ch. June 17, 1994) (master's report) (not published), *approved*, No. 1043-S, 1994 WL 586833 (Del. Ch. Oct. 7, 1994) (mem. op., not

published). These contract law principles apply to arbitration agreements. *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430–31 (Del. Ch. 2007).

Texas law is similar; successors in interest are bound to arbitration agreements entered into by their predecessors. *Moncrief 1*, 672 S.W.3d at 166–67; *Medinet Invs., LLC v. English*, No. 05-17-00179-CV, 2018 WL 1602525, at *3 (Tex. App.—Dallas April 3, 2018, pet. denied) (mem. op.) (holding that non-signatory to agreement containing arbitration agreement is bound to arbitration agreement as assignee); *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 138–39 (Tex. App.—Dallas 2009, orig. proceeding) (holding that arbitration agreement in limited-warranty agreement was binding on non-signatory successor entity to limited-warranty party).

Finally, a party who seeks to obtain judicial relief to enforce rights under a contract that contains an arbitration clause cannot avoid enforcement of the arbitration provision in the same contract. *Taylor Morrison of Tex., Inc. v. Skufca ex rel. KSX & KSXX*, 660 S.W.3d 525, 526 (Tex. 2023); *Moncrief 1*, 672 S.W.3d at 166-67; *Ruff v. Ruff*, No. 05-18-00326-CV, 2020 WL 4592794, at *11–12 (Tex. App.—Dallas Aug. 11, 2020, pet. denied) (mem. op.); *accord NAMA Holdings LLC*, 922 A.2d at 430–31; *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 182 (Del. Ch. 2010).

### 3. Application of FAA to MPA

We hold that the MPA arbitration should not have been stayed and Appellants should not have been enjoined from pursuing the MPA arbitration. Further,

31

proceedings involving Tex's capacity issues should have been stayed in the trial court pending the outcome of the arbitration.

Because arbitration is a matter of contract, parties cannot be compelled to arbitrate disputes unless they have agreed to do so. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019); *Willie Gary LLC*, 906 A.2d 79. It is uncontroverted that the MPA, from its original version, contained the arbitration provision and that the terms of the MPA are binding on all original and substituted partners, both limited and general. Management Trust, Moncrief Partners, and CBM are all partners in the MPA and are bound to its arbitration provisions. The AAA arbitration brought by Appellants was on behalf of Management Trust. Facially, Appellants had a right to bring that arbitration based on the amendments to the Management Trust appointing them as successor Trustees involving disputes which facially fell within the scope of the arbitration provision. Thus, Appellants, Moncrief Partners, and CBM were parties to a container contract containing an arbitration clause that was binding on them. The question we are called on to decide is whether Tex's capacity issues, which were asserted defensively to defeat Appellants' facial rights to assert claims on behalf of Management Trust, were for the trial court or the arbitrator to decide.

Our Supreme Court summarized the analytical framework for addressing arbitrability in *TotalEnergies*:

A dispute over whether parties agreed to resolve their controversies through arbitration—referred to as a dispute over the controversies' "arbitrability"—typically encompasses three distinct disagreements: (1) the merits of the underlying controversy (here, whether Total E&P must pay MP Gulf $41 million); (2) whether the merits must be resolved through arbitration instead of in the courts; and (3) who (a court or the arbitrator) decides the second question. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018). The second question must be answered before the first, but the third must be answered before the second.

667 S.W.3d at 701.

The *TotalEnergies* case provides the answer to question three in this case, i.e., who

decides whether the merits of the case must be decided by the court or the arbitrator.

Recall that the arbitration provision in that case provided:

"[i]f any dispute or controversy arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof," and if the parties are unable to resolve that dispute or controversy through negotiations or mediation, the dispute or controversy "shall be submitted to arbitration . . . *in accordance with the rules of the AAA and the provisions in this Article 16.16." And article 16.16.2 provides that the "procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA, as may be modified by the panel of arbitrators."*

*Id.* at 699 (emphasis added).

And recall that the court held that this language delegated the arbitrability

question to the arbitrator. *Id.* at 712; *see also West IP Commc'ns, Inc.*, 2014 WL 3032270,

at *7, *10.

Like the language in the *TotalEnergies* case, the MPA arbitration agreement here

is broad, providing "[f]or the resolution of any dispute under this Agreement [that] is

33

not otherwise resolved pursuant to other procedures under Exhibit F of the Agreement, or [that] specifically refers to this Exhibit G." Like the agreement in *TotalEnergies*, the MPA also provides that the arbitration proceedings under Exhibit G "shall be conducted in accordance with the Commercial Arbitration Rules of the AAA." Thus, the arbitrator decides the "second question" in this case.

We also find our rationale in *Moncrief 1* to be persuasive. In *Moncrief 1*, the arbitration agreement was contained in a container contract (the partnership agreement). 672 S.W.3d at 160–61. The parties did not contest the validity of the arbitration provision itself. *Id.* at 169. The question was whether Tex, in making amendments to the container agreement appointing Dick and Marshall as successor general partners, lacked the capacity to make those amendments or was unduly influenced to do so, thereby depriving Dick and Marshall of their status as successor general partners of the partnership and the authority to act on behalf of the partnership. *Id.* at 162. We held that the capacity issue was a challenge to the container agreement, not the arbitration agreement, and it was for the arbitrator to decide based on the same rationale as adopted by the Supreme Court in *TotalEnergies*. *Id.* at 169–70.

Based on clear precedent from both Texas and Delaware, we hold that the arbitration agreement in the MPA clearly and unmistakably delegated arbitrability to the arbitrator, not the court. Despsite Moncrief Partners' and CBM's dismissals from the case when their interventions were struck, Appellants, as facially designated Trustees of Management Trust, were still parties to the MPA arbitration with Moncrief Partners

34

and CBM that was based on an arbitration provision in the MPA.[8] Tex's capacity issues, as defenses to Appellants' status as rightful Trustees with authority to bring the arbitration claims on behalf of Management Trust, were defenses to MPA (the container contract)—not the arbitration provision—and were for the arbitrator to decide. *TotalEnergies*, 667 S.W3d at 771–72; *Moncrief 1*, 672 S.W.3d at 169–170.

Having determined that Appellants, as facially designated Trustees of Management Trust, should not have been enjoined or stayed from pursuing the arbitration with Moncrief Partners and CBM, we must decide how that decision impacts the trial court's denial of Appellants' Motion to Stay the trial court's proceedings involving Tex's capacity issues pending the results of the arbitration. We hold that the trial court abused its discretion by not granting Appellants' Motion to Stay proceedings in the trial court on Tex's capacity issues pending the results of the arbitration.

It is axiomatic that if Appellees are signatories to the MPA, then their claims in the trial court on Tex's capacity issues must be stayed. *Merrill Lynch Tr. Co. FSB*, 235 S.W.3d at 195. If Appellees are non-signatories to the MPA, under the FAA the court's focus on deciding whether to stay non-signatories' claims against signatories when similar issues are pending in an arbitration is "the preservation of meaningful arbitration, not the potential harm to the interests of a non[-]signatory." *Devon Energy*

---

[8]Trusts are not legal entities and act through their trustees as legal representatives. *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006).

*Corp.*, 332 S.W.3d at 550; *see also Merrill Lynch Tr. Co. FSB*, 235 S.W.3d at 195 (holding that when an issue is pending in both arbitration and litigation, the FAA generally requires the arbitration to go forward first; arbitration "should be given priority to the extent it is likely to resolve issues material to this lawsuit" (quoting *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001))). Under the FAA, claims of a non-signatory must be stayed if "(1) the arbitrated and litigated disputes involve the same operative facts, (2) the claims asserted in the arbitration and litigation are 'inherently inseparable,' and (3) the litigation has a 'critical impact' on the arbitration." *Devon Energy Corp.*, 332 S.W.3d at 548. Finally, the non-signatory's status as plaintiff or defendant is not dispositive. *Id.*; *Merrill Lynch Tr. Co. FSB*, 235 S.W.3d at 196.

Although Appellants contend that Appellees are bound by the MPA arbitration agreement, we need not decide that question to resolve the issue of whether Appellants' Motion to Stay the resolution of Tex's capacity issues in the trial court should have been granted. The capacity issues related to Tex in both proceedings involve the same operative facts and are inherently inseparable. Finally, the trial court litigation could have a critical impact on the arbitration as either collateral estoppel or res judicata could attach to the trial court's determination of the capacity issues. *City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App.—San Antonio 2015, pet. denied). Since the capacity issues are pending in both proceedings and meet the requirements for a stay under the FAA, the trial court abused its discretion by denying Appellants' Motion to Stay action in the trial court on Tex's capacity pending resolution of the MPA arbitration. *Merrill*

36

*Lynch Tr. Co. FSB*, 235 S.W.3d at 195; *Diligent Tex. Dedicated LLC*, 2018 WL 4140637, at *6.

### b. Case 00058—OGM Agreement

#### 1. Issues on Appeal

Appellants contend in their first two issues, collectively, that the trial court abused its discretion by granting the temporary injunction enjoining and staying the OGM arbitration and impliedly denying Appellants' Motion to Stay Litigation because the OGM Agreement delegated arbitrability to the arbitrators and the arbitration agreements cover the capacity issues. Appellants' third issue contends that the trial court abused its discretion regarding those same orders because Appellees are bound by the arbitration provision in the OGM Agreement, which covers Tex's capacity issues. Appellants' fourth issue contends that the trial court abused its discretion on those same orders because it misapplied the law and there is legally insufficient evidence to support the probate court's February 17 Order. Because we sustain the Appellants' first two issues, we hold that the trial court abused its discretion by enjoining and staying pursuit of the OGM arbitration by Appellants and in denying Appellants' Motion to Stay proceedings involving Tex's capacity issues in the trial court pending the outcome of the arbitration. In light of this holding, we need not address Appellants' remaining issues. *See* Tex. R. App. P. 47.1.

## 2. Application of Texas Law to OGM Agreement

We have summarized pertinent Texas law above. The OGM Agreement created a Texas limited liability company expressly governed by Texas law, and its arbitration provision adopted the rules of the AAA and the statutory arbitration law in Texas. From this, we conclude that Texas arbitration law applies, which includes the TAA and the FAA since no provision expressly excludes the FAA or provides exclusive application to the TAA. *See Olshan Found. Repair Co., LLC*, 328 S.W.3d at 890; *L & L Kempwood Assoc., L.P.*, 9 S.W.3d at 127–28.

Appellees contend that TAA Section 171.023 justifies the trial court's rulings. Tex. Civ. Prac. & Rem. Code Ann. § 171.023. According to Appellees, Appellants were not signatories to the OGM Agreement, hence under subsection (a) there was no agreement to arbitrate, justifying a stay. As will be described below, there was no "bona fide dispute" about whether there was "an agreement to arbitrate." *See id.* § 171.023(b).

Subsection (b) provides that if there is a "substantial bona fide dispute as to whether an agreement to arbitrate exists, the court shall try the issue promptly and summarily." *Id.* Appellees cite to *Myrtle Consulting Group, LLC v. Resulting Partners, Inc.*, No. 01-20-00095-CV, 2021 WL 2231248, at *9 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.) (citing *Lambda Constr. Co. v. City of Alice*, 729 S.W.2d 377, 381 (Tex. App.—San Antonio 1987, no writ), and *C P & Assocs. v. Pickett*, 697 S.W.2d 828, 831 (Tex. App.—Corpus Christi–Edinburg 1985, no writ)), for the contention that it is not an abuse of discretion to temporarily enjoin an arbitration pending a

38

determination by the trial court whether claims are arbitrable. However, as will be set out below, there was no "bona fide dispute" whether "an agreement to arbitrate" existed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.023(b). Thus subsection (b) did not apply, and a stay of the arbitration would not have been appropriate under subsection (c).

It is undisputed that the OGM Agreement, with the arbitration provision embedded, was created by Tex originally in his different capacities and that substitute members of OGM were expressly bound by the terms of the Agreement when they became members. It is also uncontested that Management Trust first became a member in 2012, replacing Tex as a member. On the face of the OGM amendments, Management Trust was replaced as a member by the 2010 Trust in 2018 with Appellees as Trustees of both the 2010 Trust and the Management Trust. Then, on the face of the OGM amendments, Management Trust replaced the 2010 Trust as a member in OGM in 2021 with Appellants as sole successor Co-Trustees of Management Trust. No one has challenged the arbitration clause issue.

Trusts are not legal entities, so the trustees of a trust are the legal representatives of the trust. *Ray Malooly Tr.*, 186 S.W.3d at 570 (holding that suit against a trust must be brought against the trustee in a representative capacity because a trust is not a legal entity); *see also In re Guetersloh*, 326 S.W.3d 737, 739 (Tex. App.—Amarillo 2010, orig. proceeding) (holding that a trust was not a separate legal entity and non-attorney trustee

39

was not entitled to represent trust pro se because he would be appearing in representative capacity, which would constitute the unauthorized practice of law.)

Thus, Management Trust and 2010 Trust, and their Trustees as their representatives on the face of the governing documents, were successor members to the OGM Agreement, including the arbitration clause. Therefore, there is no "bona fide dispute" about whether there is a valid "agreement to arbitrate." Tex. Civ. Prac. & Rem. Code Ann. § 171.023(b). The OGM Agreement, as amended, was the container agreement with an agreement to arbitrate. *See Moncrief 1*, 672 S.W.3d at 166–67; *Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 119 (Tex. App.—El Paso 2018 no pet.). The only dispute is whether Appellants were the legitimate Trustees of Management Trust to assert the arbitration rights of Management Trust in the OGM arbitration. This is a challenge to the container agreement, not the arbitration agreement, and is for the arbitrator to decide. *See Moncrief 1*, 672 S.W.3d at 166–67; *Ridge Nat. Res., L.L.C.*, 564 S.W.3d at 119.

Appellees argue that the recent United States Supreme Court decision in *Coinbase v. Suski*, 144 S. Ct. 1186 (May 23, 2024), dictates a different result. In that case, Coinbase had a contract with its users that contained an arbitration provision with a delegation clause, which delegated arbitrability to the arbitrator. *Id.* at 1190. The parties had a subsequent second contract with a forum selection clause that provided that disputes would be resolved in the California courts applying California law. *Id.* at 1190–91. Thus, the parties had two separate contracts that conflicted on the issue of dispute resolution. The question posed

40

was who decides which contract controls. *Id.* at 1192. The Supreme Court held that the court must resolve the question of whether the parties agreed to send the actual dispute in question to arbitration. *Id.* at 1193.

Relying on *Coinbase*, and exercising a great leap of logic, Appellees argue that the court in this case must therefore decide which—in their words—"version" of the Management Trust applies. The leap falls short. There are not two contracts at play here: one with an arbitration clause and one with a conflicting method of dispute resolution. There is only one OGM Agreement with one arbitration clause. The amendments to the OGM Agreement do not address the arbitration clause or dispute resolution. The amendments deal with the right to control the whole OGM entity, which is a matter affecting the container agreement, not the arbitration clause specifically. We are not persuaded that the *Coinbase* decision has any application to this case.

Is the dispute facially subject to the arbitration agreement? Yes. The OGM arbitration was brought by Management Trust (through Appellants claiming to be sole successor Co-Trustees) as a member of OGM, against Appellees (as Co-Trustees of the 2010 Trust) as a member of OGM, seeking a declaration and specific performance that Management Trust owns fifty percent of OGM. Comparing this dispute to the OGM arbitration agreement, this is a disagreement between two parties claiming to be members of the company (OGM), concerning the company (OGM)–a dispute squarely within the language of the arbitration agreement. *See Rummel Klepper & Kahl, LLP,* 2022 WL 29831, at *4 (holding that a motion to dismiss for lack of subject jurisdiction

41

will be granted if the dispute, on its face, falls within the arbitration clause); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754–55 (Tex. 2001) (orig. proceeding) (holding that to determine whether a party's claims fall within an arbitration agreement's scope, the court focuses on the complaint's factual allegations).

Appellees argue that Appellants cannot be considered "members" entitled to invoke arbitration just because they say they are. Appellees' objection to Appellants as successor Co-Trustees of Management Trust is dependent on Appellees' capacity-issue defenses. Since these defenses challenge the capacity of Appellants to sue on behalf of Management Trust, they are defenses on the merits. *John C. Flood of DC, Inc. v. Supermedia, LLC*, 408 S.W.3d 645, 651–52 (Tex. App.—Dallas 2013, pet. denied); *Nine Greenway Ltd. v. Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Thus, the issues regarding Tex's "capacity," which give rise to the challenge to Appellants' capacity to sue on behalf of Management Trust, are merits defenses, and the merits of a claim are irrelevant to our present determination. *In re Great W. Drilling, Ltd.*, 211 S.W.3d 828, 836 (Tex. App.—Eastland 2006), *judgment vacated on other grounds*, *In re Gulf Expl., LLC*, 289 S.W.3d 836 (Tex. 2009) (orig. proceeding); *Universal Comput. Sys., Inc. v. Dealer Sols., L.L.C.*, 183 S.W.3d 741, 749 (Tex. App.—Houston [1st Dist.] 2005 pet. denied) (holding that even if a party's claim is frivolous, the trial court may not rule on the potential merits of a claim when determining whether the parties have agreed to submit an issue to arbitration).

Are the capacity issues delegated to the arbitrators? Yes. Like the agreement in *TotalEnergies*, the arbitration provision in the OGM Agreement is broadly worded and provides for arbitration to be conducted in accordance with the AAA commercial arbitration rules. We therefore conclude that the OGM Agreement delegates arbitrability issues, including the capacity issues, to the arbitrator. *See Moncrief 1*, 672 S.W.3d at 167–169 (discussing similarly worded arbitration provision between these parties).

Since Appellants and Appellees both claim to be successors to the OGM Agreement that contains an agreement to arbitrate, the dispute is subject to the arbitration agreement. And because the capacity issues were pending in the OGM arbitration, the probate court abused its discretion by granting Appellees' the temporary injunction and stay prohibiting Appellants from proceeding with the OGM arbitration and implicitly denying Appellants' Motion to Stay the trial court's proceedings on the capacity issue. *RSL Funding LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (holding that on motion of a party to an arbitration agreement the trial court must order arbitration even though the order might result in less efficient, separate proceedings); *Moncrief 1*, 672 S.W.3d at 163–64 (holding that when arbitration is mandatory, it is an abuse of discretion to issue a temporary injunction stopping it); *Hawthorne Townhomes*, 282 S.W.3d at 138–39 (holding successor in interest bound to arbitration agreement of predecessor in interest); *Merrill Lynch Tr. Co. FSB*, 235 S.W.3d at 195 (holding that issues in litigation that are the subject of arbitration are required to be stayed); *see also Diligent Tex. Dedicated LLC*, 2018 WL 4140637, at \*6. We will sustain Appellants' first two issues.

43

### c. Case 00058—SBR Agreement

#### 1. Issues on Appeal

The issues on appeal are the same as set forth above regarding OGM and we will not re-state them here. As with OGM, because we will sustain Appellants' first two issues collectively, we need not address their other issues. *See* Tex. R. App. P. 47.1.

#### 2. Law Applicable to SBR Arbitration Agreement

Having already discussed the pertinent portions of Texas arbitration law, we will now address Colorado law. We find that Colorado arbitration law is consistent with Texas arbitration law in matters relevant to this appeal. First, a valid and enforceable arbitration agreement divests the court of jurisdiction of all arbitrable issues. *Eychner v. Van Vleet*, 870 P.2d 486, 489 (Colo. App. 1993). Determining whether a valid and binding arbitration contract exists is governed by ordinary contract principles. *Vallagio at Inverness Res. Condo. Ass'n, Inc. v. Metro. Homes, Inc.*, 412 P.3d 709, 714 (Colo. App. 2015), *aff'd*, 395 P.3d 788 (Colo. 2017). The right to compel arbitration arises from contract. One who is not a party to the contract generally lacks standing to compel arbitration. *Santich v. VCG Holding Corp.*, 443 P.3d 62, 65 (Colo. 2019). A non-signatory may compel a signatory to arbitrate under limited circumstances such as assumption of the arbitration obligation by the non-signatory, agency, estoppel, successor-in-interest, and third-party beneficiary. *Id.* Likewise, where a party seeks to enforce the benefits of a contract with an arbitration clause, it cannot then avoid the arbitration provision. *Parker v. Ctr. for Creative Leadership*, 15 P.3d 297, 298 (Colo. App. 2000).

In arbitration agreements governed by the FAA, where "the parties explicitly incorporate rules that empower the arbitrator to determine issues of arbitrability, that incorporation constitutes clear and unmistakable evidence of intent to delegate those issues to the arbitrator." *Ahluwalia v. QFA Royalties, LLC*, 226 P. 3d 1093, 1098 (Colo. App. 2009); *see Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018). The same is true under the Colorado arbitration statute. *Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1094 (Colo. App. 2010). Incorporation of the AAA rules is sufficient to delegate the question of arbitrability to the arbitrator. *Dish Network, L.L.C.*, 900 F.3d at 1246. Absent contractual delegation of arbitrability issues to an arbitrator, fraudulent inducement claims that are directed at the agreement to arbitrate are to be decided by the court, but claims of fraudulent inducement to enter into an entire contract that contains an arbitration clause are for the arbitrator. *Pope v. Integrated Ass'n of Denver, Inc.*, No. 16-cv-2588-JLK, 2017 WL 4857407, at *2 (D. Colo. Apr. 21, 2017).

Finally, if claims pending in the trial court are the subject of an arbitration, the court **"shall"** stay those claims pending resolution of the arbitration. Colo. Rev. Stat. § 13-22-207(7) (2024) (emphasis added); *See Lane v. Urgitus*, 145 P.3d 672, 682 (Colo. 2006). If the case also involves claims that are not a subject of the arbitration agreement, "the court **may** limit the stay to th[e] claim[s]" that are subject to the arbitration agreement. Colo. Rev. Stat. § 13-22-207(7). (emphasis added).

### 3. Application of Texas and Colorado Law to SBR Agreement.

We hold that the trial court abused its discretion by enjoining Appellants from pursuing (and by staying) the SBR arbitration and by not staying the proceedings involving the capacity issues in the trial court pending resolution of the SBR arbitration. Based on the above authority, we hold that Colorado law and Texas law are consonant and that the results would be the same regardless of which state's law governs.

First, it is uncontroverted that a valid container agreement with an arbitraton clause existed. Tex, in his various capacities, created the SBR Agreement, and that agreement contained the arbitration clause in question. That arbitration clause remained in the SBR Agreement throughout the period in question. The SBR Agreement, at all relevant times, provided for the admission of substitute members and provided that substituted members would be bound by the terms of the SBR Agreement, which contained the arbitration clause. No party has contested the validity of the arbitration clause. Facially, Management Trust was a substituted member of SBR and was bound by the SBR Agreement, including the arbitration agreement. The fight, then, is over who has the right to represent Management Trust as Trustees, Appellees or Appellants, in Management Trust's role a member and manager of SBR.

Appellees' counterclaim against Appellants in the trial court alleged that Appellees were the rightful Trustees by virtue of their designations in Management Trust amendments as of August 2020. Appellants' lawsuit contended that those Management Trust documents were superseded by subsequent amendments that

appointed Appellants as sole successor Trustees of Management Trust. Appellees responded that Appellants were not rightfully Appellees' succesors as Trustees because the post-August 2020 Management Trust amendments and the Fourth Amendment to the SBR Agreement (in August 2021) were vitiated by Tex's capacity issues. These positions were asserted by both sides in the SBR arbitration, too.

The decision regarding who are the rightful Management Trust Trustees and SBR members and managers rests with the arbitrator, not the trial court. As previously noted, trusts are not legal entities, so the Trustees of a trust are the legal representatives of the trust. *Ray Malooly Tr.*, 186 S.W.3d at 570; *see Guetersloh*, 326 S.W.3d at 739. Management Trust and its Trustees, along with Deborah's Family Trust and its Trustees, are successor members to the SBR Agreement, which includes an agreement to arbitrate. The Management Trust amendments reflect Appellants as the last designated successor Trustees. Deborah's Family Trust's Trustees were Appellees. Thus, there was a dispute between SBR members, Management Trust and Deborah's Family Trust, regarding the company. As with our OGM analysis, this was a dispute that facially involved SBR members on a matter subject to the arbitration agreement. Tex's capacity issues, again, represent a defense to the merits, not a contract-formation defense. Since there was a valid arbitration agreement and the claims facially fall within the subject matter of the arbitration agreement, the trial court abused its discretion by enjoining and staying the SBR arbitration.

47

Did the arbitration agreement delegate arbitrability to the arbitrator? Yes. The arbitration provision in the SBR Agreement is identical to the provision in the OGM Agreement. As noted in our discussion about that agreement, it provided for arbitration in accordance with the commercial arbitration rules of the AAA. The effect of that provision was to delegate arbitrability questions to the arbitrator. The result is the same here.

Finally, as we discussed above, since the capacity issues were part of an arbitration process that Appellants were entitled to pursue, it was an abuse of the trial court's discretion not to stay those issues in the trial court pending the result of arbitration. We sustain Appellants' first two issues.

## IV. Conclusion

Having sustained Appellants' dispositive issues as described above, we reverse the trial court's temporary injunction orders and stay orders prohibiting Appellants from proceeding with the MPA, OGM, and SBR arbitrations. We also reverse the trial court's implicit order denying Appellants' motions to abate the trial court's proceedings regarding Tex's capacity issues pending resolution of the arbitrations. The trial court is instructed to abate its proceedings involving the capacity issues in both underlying probate cases until final resolution of the respective arbitrations.[9] We lift the February 17, 2023 stay issued by this court.

---

[9]The dissent argues that by holding that the issues of mental capacity and undue influence are subject to arbitration in the ancillary trust litigation, the majority

48

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: August 1, 2024

---

"effectively" deprives the statutory probate court of its exclusive jurisdiction to adjudicate the exact same questions for determining which will and codicils to admit to probate. In essence, the dissent argues that the findings on mental capacity and undue influence in the arbitration will be res judicata or collateral estoppel in the will contest. However, "collateral estoppel and res judicata are not jurisdictional issues. Although they may affect the merits of [a] claim, they do not deprive the court of jurisdiction over the suit." *Dolenz v. Vail*, 200 S.W.3d 338, 341 (Tex. App.—Dallas 2006, no pet.). *See also Owens v. Alexander*, No. 05-18-00123-CV, 2019 WL 3334626, at *4 (Tex. App.—Dallas July 25, 2019, no pet.) (mem. op.); *Central States Logistics, Inc. v. BOC Trucking, LLC*, Nos. 01-16-00693-CV, 01-18-00399-CV, 2018 WL 3120178, at *1 (Tex. App.—Houston [1st Dist.] June 26, 2018, order). We express no opinion on what effects the arbitration findings will have in the will contest.

49